**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL RUSSELL DAGNAN, | ) | CASE NO. 1:17-cv-1585 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Daniel Russell Dagnan (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On November 5, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of September 1, 2013. (Transcript ("Tr.") 167-170). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 114-129). Plaintiff participated in the hearing on March 11, 2016, was represented by counsel, and testified. (Tr. 40-89). A vocational expert ("VE") also participated and testified. *Id*. On May 4, 2016, the ALJ found Plaintiff not disabled. (Tr. 33). On June 1, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On July 28, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 12 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by according little weight to the opinion of a mental health nurse practitioner; (2) the residual functional capacity ("RFC") determination is not supported by substantial evidence; (3) the ALJ erred by failing to consider Plaintiff's traumatic brain injury a medically determinable impairment; and (4) the ALJ erred by failing to mention the VA's determination that Plaintiff was partially disabled. (R. 10).

## II. Evidence

**A. Relevant Medical Evidence**[1]

   **1. Physical Impairments**

On October 2, 2013, Plaintiff was seen in the audiology clinic for a hearing evaluation following tube placement in the left ear. (Tr. 611, 1028). Plaintiff reported some hearing loss in the left ear, resulting in "some difficulty understanding speech in movie theaters or while watching television." *Id*. He endorsed symptoms of tinnitus, mild intermittent bilateral ringing, and ear drainage, but denied dizziness or ear pain/pressure/fullness. *Id*.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by Plaintiff's "Statement of Facts" as germane to the assignments of error raised or other information deemed relevant by the court.

On November 19, 2013, Plaintiff reported to social worker Kathy M. House, LISW-S, that he had a history of "Chronic Post-Traumatic Headaches, Poor Memory, Traumatic Brain Injury, Unilateral Hearing Loss, and difficulties with attention and concentration." (Tr. 580). Plaintiff stated his then current problems were as follows: "Poor coordination, clumsy, Headaches, Sensitivity to light, Poor concentration, cannot pay attention, easily distracted, Forgetfulness, cannot remember things, Difficulty falling or staying asleep, Feeling anxious or tense, Irritability, easily annoyed, [and] … fatigue and loss of appetite." (Tr. 580-582). Under history of present illness, the following was noted:

> Veteran served in the Marine Corps from November 2005 to November 2009.... He reported four episodes of IEDs [improvised explosive device] — 3 including blast waves, l where he was thrown to the ground, 1 loss of consciousness, and 2 episodes of injury other than a blast. He reports Chronic Post-Traumatic Headaches, Poor Memory, Traumatic Brain Injury, Unilateral Hearing Loss, and difficulties with attention and concentration. He is NSC and currently not employed.

(Tr. 999).

On December 13, 2013, Plaintiff was seen by physician Ronald G. Reichers, who noted Plaintiff was "initially seen in TBI clinic in AUG2013 at which time he was diagnosed with mTBI and recommended to be seen in speech as well as be seen in psychiatry via polytrauma." (Tr. 987). Plaintiff reported injury events occurring in April, June and September 2007, with loss of consciousness during the first and second event, and the third event resulting in a dazed/confused sensation. *Id*. Plaintiff reported "problems with recalling conversations, forgetting what he does, etc." *Id*. He also reported memory issues, headaches three to four times per week, and difficulty with sleep. *Id*. "His exam show[ed] no neurologic signs of persistent damage." (Tr. 988). Dr. Reichers stated that he "[w]ould not expect significant persistent cognitive impairments after mild TBI so other potential contributing factors such as PTSD or

3

sleep apnea need to be evaluated for." *Id*. Dr. Reichers' assessment was personal history of traumatic brain injury (mild x 3), PTSD, poor short term memory, poor sleep, and tension-type headache. (Tr. 988).

On January 23, 2014, Plaintiff reported trouble staying asleep due to nightmares and occasional breathing pause arousals. (Tr. 518). On mental status examination, Plaintiff was alert and oriented, and cranial nerves were unremarkable. *Id*. Motor exam showed normal strength tone and bulk in all four extremities, equal and symmetric reflexes, normal coordination, and gait, intact sensation, and mild distention tremor. *Id*. The assessment noted insomnia, cognitive deficits associated with head trauma, and depression. *Id*.

On January 2, 2015, Plaintiff was seen by H.M. Tucker, M.D., complaining that "his hearing is again no better than when he had a PE tube placed in 2013." (Tr. 312). Plaintiff had no other otologic symptoms, and on examination, both ears appeared to be within normal limits. *Id*. The previously placed tube in his ear was gone. (Tr. 307, 312).

On January 5, 2015, Plaintiff was a "no show" for a sleep disorder appointment. (Tr. 316).

On February 27, 2015, a CT temporal bone scan revealed left middle ear cholesteatoma, thinning tegmen tympani versus erosion, and unremarkable right temporal bone structures. (Tr. 1933-1934).

On March 31, 2015, Plaintiff was seen for a balance assessment. (Tr. 1808). He reported a "sudden onset, continuous unsteadiness/off-balance feeling since getting discharged from the military in 2009 [but] denie[d] true vertigo." *Id*. The Balance Handicap Inventory was administered as a tool to assess self-perceived handicap and the results indicated a moderate handicap. *Id*. A videonystagomagraphy (VNG) was abnormal. *Id*.

On October 29, 2015, Plaintiff's service connected disability rating was 50% for PTSD.

4

(Tr. 2035, 2037).

On November 12, 2015, operative findings revealed a normal right ear, and a collared button PE tube was placed in the left ear by Maroun Semaan, M.D. (Tr. 2053). There was a post-operative diagnosis of conductive hearing loss and middle ear effusion in the left ear. (Tr. 2053).

### 2. Mental Impairments

On December 13, 2013, nurse practitioner Elizabeth A. Treiber stated that she told Plaintiff "I do not think than [sic] any of his current mental health providers would fill out a form that certifies he is disabled because of severe emotional issues--veteran does have mental health issues that he is working on such as readjustment issues--but his biggest issues right now are lack of job and lack of housing, not severe mental disability." (Tr. 986).

On February 10, 2014, Plaintiff was hospitalized after a night of excessive drinking and swallowing 29 Trazodone pills, in what he described as "act[ing] that way for attention" after an altercation with his girlfriend. (Tr. 318-319). Plaintiff immediately induced vomiting afterwards and called emergency medical services. *Id*. On discharge, Plaintiff indicated that "he understand[s] that his actions could have killed himself, but his intentions were not of that nature…. He states having multiple stressors recently, most noteably [sic] are his issues with housing," difficulty finding a job, and difficulty paying for child support. (Tr. 319).

### 3. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 12, 2015, Winnie Yip, a board certified psychiatric mental health nurse practitioner, wrote a letter indicating that she had treated Plaintiff "since August 2015," the same month the letter was written. (Tr. 1992). She noted that Plaintiff had been diagnosed with post-traumatic stress disorder. Plaintiff had "heightened anxiety and a persistent negative emotional state which have significantly impacted his social functioning." *Id*. She indicated that Plaintiff's

5

psychiatric conditions "may limit his ability to sustain employment," and she believed he had a fair prognosis. *Id*.

On August 28, 2015, nurse Yip completed a Medical Source Statement of Ability to do Work-Related Mental Activity form. (Tr. 1988-1990). She opined that Plaintiff's mental impairments had no effect on his ability to understand, remember, and carry out instructions. (Tr. 1988). She did, however, opine that Plaintiff had marked limitations in his ability to interact appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1989). She identified the following factors supporting her assessment: hypervigilance, flashbacks of Iraq combat zones, and heightened anxiety in social situations. *Id*. She believed these limitations were present since 2009. *Id*.[2]

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First,

---

[2] As Plaintiff has not challenged the ALJ's credibility determination or taken issue with the VE's testimony, the court foregoes any recitation of the hearing testimony.

the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since September 1, 2013, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: affective disorder, anxiety disorder and alcohol/substance addiction disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

>Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to perform simple, routine tasks but not at a production rate pace; occasionally interact with supervisors, co-workers and the public; he is limited to occasional routine workplace changes that can be explained in advance.
>
>6. The claimant is capable of performing past relevant work as an assembler of filters and hand bagger. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>7. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2013, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 23-33).

## V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Weight Ascribed to Nurse Yip's Opinions

In the first assignment of error, Plaintiff asserts that the ALJ erred by ascribing little weight to the opinions of nurse Yip, a board certified mental health nurse practitioner. (R. 10, PageID# 2153-2155).

On May 4, 2016, the date the ALJ rendered the decision, the regulations did not include nurse practitioners among the five identified types of "acceptable medical sources," but included them in the category of "other sources." *Compare* former 20 C.F.R. §§ 404.1513(a) & 416.913(a) with former 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1). While recent revisions to the regulations now include licensed advanced practice registered nurses among the list of "acceptable medical sources," the revisions are expressly *not* retroactive. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or *after* March 27, 2017**)(emphasis added)); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion from an "other source" such as a chiropractor).

Although nurse practitioners are not "acceptable medical sources" under the regulations for the purposes of the case at bar, Social Security Ruling ("SSR") 06-03p, notes that information

9

from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
>> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
>> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).
>
> Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the

> claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (emphasis added).

Here the ALJ did not ignore nurse Yip's opinions or merely consider them in silence. Instead, the ALJ provided the following explanation concerning the weight accorded to her opinions:

> As for the opinion evidence, in August 2015, Winnie Yip, a mental health nurse practitioner submitted mental medical source statement. She noted the claimant had a persistent fear of being attacked by strangers and he may not be able to interact appropriately with the public. She also noted he had heightened anxiety in social situations, hypervigilance and flashbacks from his time in Iraq. She opined he had no limitations understanding, remembering and carryout [sic] simple and complex instructions or making judgments on simple or complex work related decisions. However, she opined the claimant had marked limitations interacting appropriately with the public, co-workers and supervisors and responding appropriately to usual work situations (Exhibits 6F, 7F). Ms. Yip marked limitations are given little weight, as they are inconsistent with the claimant's treatment notes. While social limitations were noted in the record, the claimant stated he was confident with his interpersonal skills and he preferred to work in groups (Exhibit 3F/314). He also attended group therapy and it was noted he was sociable with his peers (Exhibit 3F/91). He also worked at two locations since his alleged onset date and he stated he communicated well with his manager (Exhibit 1 F/23, 3F/17).

(Tr. 20-21).

The ALJ's discussion is sufficient, and it adequately considered those factors the ALJ deemed relevant, such as the consistency of the opinions with the treatment record as a whole.

11

The ALJ specifically includes several examples of inconsistencies. (Tr. 30). In his brief, Plaintiff suggests that the ALJ cherry-picked the evidence and believes that the diagnoses and symptoms in the record would support the limitations assessed. (R. 10, PageID# 2154-2155). Plaintiff's brief essentially takes issue with the ALJ ascribing greater significance to some portions of the record rather than to others, but Plaintiff labeling such activity as cherry-picking does not provide a basis for a remand. Plaintiff has not identified any factual inaccuracy in the ALJ's discussion of nurse Yip's opinion. The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by the ALJ unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017).

Plaintiff's other argument—that the limitations assessed by nurse Yip arguably correlate to the diagnoses and symptoms noted in the record—is tantamount to an invitation for this court to reweigh the evidence and to specifically assign greater weight to nurse Yip's opinion. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11

(E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Finally, Plaintiff's attempt to portray nurse Yip's relationship as "longitudinal" and "extensive" is simply inaccurate. (R. 10, PageID# 2154; R. 14, PageID# 2192). Nurse Yip's disputed opinions were rendered in a letter and form both completed in August of 2015. (Tr. 1988-1990, 1992). Plaintiff's brief acknowledges that nurse Yip only began seeing Plaintiff in the same month. (R. 10, PageID# 2153). Thus, Plaintiff's characterization of nurse Yip's opinions as the product of a long-standing relationship is belied by the record.

The explanation requirement for considering "other source" opinions, such as those of nurse Yip, is not the equivalent of the treating physician rule, which is applicable only to *acceptable medical sources*. Furthermore, "other-source opinions are not entitled to any special deference." *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x 547, 550 (6th Cir. 2014). The court finds no deficiency with the level of explanation the ALJ provided regarding nurse Yip's opinion, and the first assignment of error is without merit.

**2. Weight Ascribed to State Agency Opinions**

In the second assignment of error, Plaintiff asserts the RFC is not supported by substantial evidence. (R. 10, PageID# 2156-2157). However, the crux of Plaintiff's argument appears to be the contention that the ALJ did not adequately evaluate the opinions of the State Agency psychologists. *Id*.

On February 18, 2015, State Agency psychologist Marjorie Kukor, Ph. D., completed a mental RFC assessment. (Tr. 95-97). She opined that Plaintiff had understanding and memory limitations, as well as sustained concentration and persistence limitations, but those did not

13

significantly limit his ability to remember locations and work-like procedures, or his ability to carry out, understand and remember very short and simple instructions. (Tr. 95-96). She opined, however, that he was moderately limited in his ability to understand, remember, and carry out detailed instructions, but retained "the ability to recall 1-3 step instructions" as well as "multi-step tasks with written or verbal reminders." *Id.* Dr. Kukor noted that when Plaintiff's symptoms were active, he would need flexibility with his breaks and daily work schedule. *Id.* She also indicated that Plaintiff could adapt to regular work schedules and tasks, but, when his symptoms are severe, he will need to preview changes and gradually implement them to allow time for adjustment. (Tr. 96).

On June 2, 2015, State Agency psychologist Tonnie Hoyle, Psy. D., also completed a mental RFC assessment. (Tr. 108-109). She assessed limitations that largely mirrored Dr. Kukor's opinion, except that she made no mention of a need for written or verbal reminders for multi-step tasks or flexibility with breaks and daily work schedule. *Id.* Dr. Hoyle opined that Plaintiff could perform 1-3 step tasks without strict time or production demands, and could perform tasks in a setting where changes are infrequent and explained in advance. *Id.*

The ALJ found as follows:

> At the initial level, Majorie Kukor, Ph.D., a State agency psychiatric consultant, opined that the claimant was able to perform one to three step tasks and multi-step tasks with written or verbal reminders. He could also adapt to regular work schedules and tasks. Upon reconsideration, Tonnie Hoyle, Psy.D., a State agency psychiatric consultant, opined the claimant was able to perform one to three step tasks without strict time or production demands and he could perform tasks in a setting where changes were infrequent and explained in advance (Exhibits 1 A, 3 A). The opinion of Dr. Hoyle is given great weight; however, the claimant was limited to only occasional interaction with supervisors, co-workers and the public due to social limitations noted during mental health treatment. Although there were some social limitations, he stated he was confident with his interpersonal skills and he preferred to work in groups (Exhibit 3F/314). He also attended group therapy and it was noted he was sociable with his peers (Exhibit 3F/91). He also

14

> worked at two locations since his alleged onset date and he stated he communicated well with his manager (Exhibit 1F/23, 3F/17).

(Tr. 30).

Plaintiff's assertion that the ALJ overlooked these opinions is untenable. (R. 10, PageID# 2157). Dr. Hoyle's opinion expressly received great weight. While the ALJ does not state whether she was assigning great, some, little, or no weight to the opinion of Dr. Kukor's largely similar opinion, Plaintiff cites no authority that this alone is grounds for a remand. In relevant part, the RFC limited Plaintiff to "simple, routine tasks but not at a production rate pace; occasionally interact with supervisors, co-workers and the public; he is limited to occasional routine workplace changes that can be explained in advance." (Tr. 27). Although Plaintiff suggests the RFC does not sufficiently incorporate the above restrictions from the State Agency physicians, Plaintiff fails to meaningfully explain how the RFC does not adequately account for those limitations. "[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See. e.g., Kennedy v. Comm'r*, No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). The *McPherson* court aptly stated: "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted). The court sees no glaring inconsistency between the RFC and the State Agency opinions, and, absent any developed argument from Plaintiff, the assignment of error lacks merits and is deemed waived.

**3. Minor Traumatic Brain Injury (mTBI) as a Severe Impairment**

In the third assignment of error, Plaintiff asserts the ALJ erred because the decision "failed to classify Mr. Dagnan's traumatic brain injury as a severe or non-severe impairment," and therefore Plaintiff contends the ALJ did not consider it to be a medically determinable impairment. (R. 10, PageID# 2158). The court disagrees, as Plaintiff's argument elevates form over substance.

As an initial matter, the Social Security regulations define a "severe" impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "At step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…") The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

Here, the ALJ designated several impairments as severe, including the following: affective disorder, anxiety disorder, and alcohol/substance addiction disorder. (Tr. 25). The ALJ also addressed Plaintiff's hearing loss, but found it to be non-severe. (Tr. 25-26). While the ALJ did not designate mTBI as "severe," failure to do so is not of any particular significance. Because an ALJ must move on to the subsequent steps in the sequential evaluation if only one impairment is found to be "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed.

App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir.2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)). After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184 at *5 (Jul. 2, 1996).

To be sure, the ALJ did not designate Plaintiff's mTBI as a severe impairment. (Tr. 25-26). The ALJ's decision not to designate an impairment as "severe" at step two does "not constitute reversible error," when the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation, *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577. Because the ALJ found multiple severe impairments, continued with the sequential evaluation, and considered the impact of Plaintiff's limitations when arriving at the RFC, no reversible error has been identified.

Moreover, Plaintiff has not pointed to evidence suggesting that the ALJ ignored the impairments or limitations that stemmed from his mTBI. To the contrary, the ALJ expressly discussed and found severe Plaintiff's affective and anxiety disorders that appear to stem from Plaintiff's military service. (Tr. 25). When arriving at the RFC, the ALJ also specifically addressed Plaintiff symptoms/impairments of PTSD, depression, hearing loss, as well as his reports of difficulty understanding and following instructions, inability to focus and concentrate, trouble interacting with others, and frequent nightmares. (Tr. 28). Plaintiff has not identified any

other limitations stemming from his mTBI that went unaddressed in the decision. As such, Plaintiff has not established that failure to include the mTBI in the category of severe (or non-severe) impairments resulted in reversible error. *Vidot v. Colvin*, No. 1:14 CV 1343, 2015 WL 3824360, at *2 (N.D. Ohio June 18, 2015) ("any failure on the part of the ALJ at step two to consider plaintiff's migraine headaches to be a severe impairment is 'legally irrelevant' because the ALJ found that plaintiff suffers from other severe impairments") (Gaughan, J.).

For the foregoing reasons, the third assignment of error is without merit.

**4. VA Determination**

Finally, Plaintiff contends the ALJ erred by failing to even mention that the VA determined he was partially disabled. (R. 10, PageID# 2161-2162).

The applicable provision of the regulations in effect at the time of the ALJ's decision stated that "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is *not binding* on us." 20 C.F.R. § 404.1504 (emphasis added). Nonetheless, SSR 06-03p states that "evidence of a disability decision by another governmental or nongovernmental agency [such as the VA] cannot be ignored and must be considered…. [and] the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." 2006 WL 2329939, at ** 6-7. Such decisions, the Ruling explained, "and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.*

The Commissioner contends that the VA's *decision* determining that Plaintiff was 50 percent disabled had not been made part of the record, and, therefore, the ALJ had no way of determining how the decision was reached. (R. 12, PageID# 2183). Plaintiff's brief does not identify the VA's disability decision anywhere in the record. (R. 10). Despite the Commissioner expressly making an issue of the absence of the decision from the record, Plaintiff's reply fails to rebut this factual assertion. (R. 14). The record does contain VA treatment records that reference Plaintiff having a service-connected disability of 50 percent for post-traumatic stress disorder, but no disability decision has been identified by the parties. (*See, e.g.*, Tr. 1228, 2035, 2037). Under such circumstances, the court finds no error in the ALJ's failure to "explain the consideration given" to such a decision, where it may not have been part of the record—Plaintiff has not cited to such a decision in the record and the Commissioner asserts it was not part of the record before the ALJ. At the same time, the ALJ clearly considered and discussed much of the voluminous treatment records from the VA that were undoubtedly used to render the VA's determination.[3]

---

[3] The Commissioner also cites to newly revised regulations concerning decisions from other agencies such as the VA, which states as follows:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, **in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits**. However, we will

<5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C><5652C>

Therefore, the court finds Plaintiff's final assignment of error to be without merit.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: June 19, 2018

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. (emphasis added). The court declines to apply § 404.1504 to the case at bar, as this case relates to a decision that predates March 27, 2017.